

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **DANIEL THORNHILL, JR.** | § | Case No. 19-20005 |
| xxx-xx-5369 | § | |
| | § | |
| Debtor | § | Chapter 13 |

| | | |
|---|---|---|
| HARRY VRANA and | § | |
| DAWANNA VRANA | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | Adversary No. 19-2001 |
| | § | |
| DANIEL THORNHILL, JR. | § | |
| | § | |
| Defendant | § | |

### MEMORANDUM OF DECISION REGARDING
### PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

On this date the Court considered the Motion for Summary Judgment filed by the

Plaintiffs, Harry and Dawanna Vrana (the "Vranas" or the "Plaintiffs"), in the above-

referenced adversary proceeding. The Debtor-Defendant, Daniel Thornhill, Jr. d/b/a

Thornhill Construction (the "Debtor" or "Defendant"), has failed to file a response

opposing the Motion filed by the Plaintiffs. The Plaintiffs seek to have a pre-petition

judgment debt owed to them by the Defendant declared nondischargeable under 11

U.S.C. § 523(a)(4) as a debt arising from fraud or from a defalcation while acting in a

fiduciary capacity.

` Upon due consideration of the pleadings, the proper summary judgment evidence

submitted, including the factual determinations that are binding upon the Defendant (and

this Court) through the principles of issue preclusion, and the relevant legal authorities,

the Court concludes that the Plaintiffs have demonstrated that there is no genuine issue as

to any material fact and that they are entitled to judgment as a matter of law that the debt

owed to them by the Debtor-Defendant, Daniel Thornhill, Jr., arising from the entry of a

state court judgment entered by the 71st Judicial District Court of Harrison County,

Texas, is nondischargeable pursuant to § 523(a)(4) of the Bankruptcy Code.  This

memorandum of decision disposes of all issues pending before the Court.[1]

## Factual and Procedural Background[2]

The relevant facts giving rise to this action are not in dispute.  The Debtor-

Defendant, Daniel Thornhill, Jr., was a general contractor whose services were retained

by the Plaintiffs, Harry and Dawanna Vrana, to construct an addition to their residence at

557 Mulberry Lane, in Hallsville, Texas.  Early in the contractual relationship, the

Plaintiffs tendered a $43,695.00 payment to the Defendant in order to satisfy certain sums

owing to subcontractors that had performed work on the Plaintiffs' property.[3]  The

---

[1]  This Court has authority to enter a final judgment in this adversary proceeding since it statutorily constitutes a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(l) and meets all constitutional standards for the proper exercise of full judicial authority by this Court.

[2]  The facts presented are those which stand uncontested between the parties and are presented only as a general factual background to the legal claims asserted in this case. This section is not intended to resolve any disputed or contested facts between the parties.

[3]  *See* Complaint, dkt. #1 at ¶ 6, and Answer, dkt. #8 at ¶ 1.

Plaintiffs soon learned, however, that the Defendant had failed to satisfy all of those subcontractor demands despite the sufficiency of the Plaintiffs' initial payment amount. In the Plaintiffs' eyes, the Defendant failed to account properly for the disposition of the tendered construction funds. The relationship quickly deteriorated. The Plaintiffs soon terminated the construction contract and the Defendant responded by filing a construction lien against the Plaintiffs' property.

The Plaintiffs subsequently sued the Defendant for fraud, breach of fiduciary duty, and misapplication of trust funds under Texas Property Code § 162.031 and to invalidate Thornhill's construction lien in an action filed before the 71st Judicial District Court of Harrison County, Texas, under case no. 17-0763 (the "State Court Litigation").[4] The petition in the State Court Litigation was tried in a bench trial. On August 16, 2018, the state court entered a final judgment that the Vranas recover from Thornhill the sum of $19,943.87, an attorneys' fee award of $15,125.00, plus an assessment of interest and court costs (the "State Court Judgment").[5] The State Court Judgment was based upon the state court's determination that Thornhill had violated the Texas Construction Trust Fund Act through his retention and diversion of the Plaintiffs' construction payments.[6] The state court entered findings of fact in support of the State Court Judgment. Specifically,

---

[4] *See* Complaint, dkt. #1 at ¶ 9, and Answer, dkt. #8 at ¶ 3.

[5] Plaintiffs' Ex. C.

[6] Plaintiffs' Ex. B.

the state court found, *inter alia*, that:

- Daniel Thornhill was hired to build an addition to Harry and Dawanna Vrana's home located at 557 Mulberry Lane, Hallsville, TX 75650, and a contract was executed.[7]

- Thornhill received payment of $43,695 from the Vranas by check under his construction contract with the Vranas.[8]

- Thornhill only deposited $9,500 into a bank account.[9]

- The periodic statement received from the financial institution for that bank account did not refer to the account as a "construction account."[10]

- Thornhill paid the following subcontractors and expenses related to the project:

  - a. Billy Crump Construction, Inc.: $6,020.00
  - b. Jose Castillo Lumber: $1,600.00
  - c. Ramirez Tree Service: $2,500.00
  - d. Thomas Reynolds Plumbing: $2,500.00
  - e. Terminix Pest Service: $270.63
  - f. Martinez Concrete: $2,000.00
  - g. Dirt Toys: $750
  - h. Pete Burks: $3,010.00
  - i. Tad Mayfield: $1,625.00
  - j. JOTS Toilet Rental: $384
  - k. Rental of machine to drill piers: $100.00.[11]

- These project-related expenses totaled $20,759.63.[12]

---

[7] *Id.* at ¶ 5.

[8] *Id.* at ¶ 6.

[9] *Id.* at ¶ 7.

[10] *Id.* at ¶ 8.

[11] *Id.* at ¶ 9.

[12] *Id.*

- Of the remaining money from the $40,000.00 ($19,943.87), Thornhill either spent the money on himself or other projects or kept the money.[13]

- At the time that Thornhill spent that money, Thornhill's work under his contract with the Vranas was not complete.[14]

- Thornhill did not maintain an account record for his construction account that provides information relating to:  (1) the source and amount of the funds in the account and the date the funds were deposited; (2) the date and amount of each disbursement from the account and the person to whom the funds were disbursed; and (3) the current balance of the account.[15]

- Defendant's lien on Plaintiff's Home for non-payment for the concrete work filed on August 31, 2017 is invalid under Texas Property Code Sections 53.055 and 53.254.[16]

- The [Defendant's] lien is invalid and unenforceable.[17]

- Defendant failed to maintain a construction account as required under Texas Property Code, Sections 162.006 and 162.007, for the down payment received under the Contract.[18]

- Defendant did knowingly, retain, disburse or divert funds held under the down payment.[19]

- Defendant misapplied the funds from the down payment.[20]

---

[13] *Id.* at ¶ 5.

[14] *Id.* at ¶ 10.

[15] *Id.* at ¶ 13.

[16] *Id.* at ¶ 15.

[17] *Id.* at ¶ 16.

[18] *Id.* at ¶ 19.

[19] *Id.* at ¶ 20.

[20] *Id.* at ¶ 21.

-5-

- Plaintiffs shall recover from Defendant damages of $19,943.87 for the misapplication of Trust Funds under Texas Property Code Section 162.031(a).[21]

- Plaintiffs have incurred reasonable and necessary attorneys' fees of $15,125.00.[22]

- Plaintiffs shall recover his [sic] attorneys' fees from Defendant in the amount of $15,125.00.[23]

- The $43,695 in payments from the Vranas to Thornhill were made to a contractor under a construction contract for the improvement of specific real property in this state.[24]

- The $43,695 in payments were trust funds when received by Thornhill.[25]

- Thornhill was a trustee of the $43,695 he received from the Vranas.[26]

- The Vranas were beneficiaries of the $43,695 they paid to Thornhill.[27]

Thornhill did not prosecute any appeal of the Final Judgment.[28]

_____

[21] *Id.* at ¶ 24.

[22] *Id.* at ¶ 26.

[23] *Id.* at ¶ 28.

[24] *Id.* at ¶ 29.

[25] *Id.* at ¶ 30.

[26] *Id.* at ¶ 31.

[27] *Id.* at ¶ 32.

[28] This Court is thus precluded from hearing any complaint regarding the propriety of the Final Judgment by the *Rooker-Feldman* doctrine, which prevents lower federal courts from reviewing a state court decision when the issues raised in the federal court would be "inextricably intertwined" with a state court judgment and the federal court would, in essence, be called upon to review the state court decision. *Davis v. Bayless*, 70 F.3d 367, 375-76 (5th Cir. 1995) (*citing United States v. Shepherd*, 23 F.3d 923, 924 (5th Cir. 1994)).  A claim entertained by a lower federal court is "inextricably intertwined" with those addressed in the state court "whenever the relief requested in the federal action would effectively reverse the state court decision or void its ruling." *In re Popkin & Stern*, 259 B.R. 701, 706 (B.A.P. 8th Cir. 2001) (*quoting Bechtold v. City of Rosemount*, 104 F.3d 1062, 1065 (8th Cir. 1997)); see also *Weaver v. Texas Capital Bank N.A.*, 660 F.3d 900, 904 (5th Cir. 2011) [observing that "as we have noted in other

On January 8, 2019, Thornhill filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code in this Court.  He scheduled the indebtedness to the Plaintiffs under the State Court Judgment as a general unsecured debt.  On January 28, 2019, the Plaintiffs filed this adversary proceeding to determine the nondischargeability of the indebtedness established by the State Court Judgment.  The Plaintiffs subsequently filed this motion for summary judgment, arguing that under the principles of collateral estoppel, all of the facts necessary to render the Defendant's indebtedness under the State Court Judgment nondischargeable as a debt for fraud or defalcation while acting in a fiduciary capacity under 11 U.S.C. § 523(a)(4) were established in the State Court Litigation.  Under Local Rule of Bankruptcy Procedure 7056, "any response in opposition to a motion for summary judgment must be filed within twenty-eight (28) days of the filing of the motion."  Notwithstanding such deadline, the Defendant filed no response in opposition to the Plaintiffs' motion for summary judgment.

## Discussion

*Summary Judgment Standards and Process*

The Plaintiffs bring their Motion for Summary Judgment in this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056.  That rule

---

cases, the *Rooker–Feldman* doctrine generally applies only where a plaintiff seeks relief that directly attacks the validity of an existing state court judgment"].  The doctrine recognizes that "judicial errors committed in state courts are for correction in the state court systems" through the appellate process. *Hale v. Harney*, 786 F.2d 688, 691 (5th Cir. 1986).

incorporates Federal Rule of Civil Procedure 56 which provides that summary judgment shall be rendered "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."[29]

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion.[30]  As a movant, a party asserting that a fact cannot be genuinely disputed must support that assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.[31]

The operation of the summary judgment standard depends upon which party will bear the burden of persuasion at trial.  "If the moving party bears the burden of persuasion at trial, it must also support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial."[32]

If the motion is supported by a *prima facie* showing that the moving party is

---

[29] FED. R. CIV. P. 56(a).

[30] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[31] FED. R. CIV. P. 56(c).

[32] *Sell v. Universal Surveillance Sys., LLC*, 2017 WL 3712188, at *3 (W.D. Tex. July 6, 2017) *(citing Celotex*, 477 U.S. at 331 (Brennan, J., dissenting)).

entitled to judgment as a matter of law, a party opposing the motion may not rest upon the mere allegations or denials in its pleadings, but rather must demonstrate in specific responsive pleadings the existence of specific facts constituting a genuine issue of material fact for which a trial is necessary.[33] "A fact is material only if its resolution would affect the outcome of the action . . . ."[34] In so demonstrating, the non-movant must show more than a "mere disagreement" between the parties,[35] or that there is merely "some metaphysical doubt as to the material facts."[36] Neither are unsubstantiated, conclusory assertions in the response sufficient to raise a genuine issue of material fact.[37] However, "[t]he issue of material fact which must be present in order to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."[38]

---

[33] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986); *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010).

[34] *Wiley v. State Farm Fire & Cas. Co.,* 585 F.3d 206, 210 (5th Cir. 2009); *accord Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

[35] *Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1413 (5th Cir. 1993).

[36] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

[37] *McCarty v. Hillstone Rest. Group, Inc.*, 864 F.3d 354, 357 (5th Cir. 2017).

[38] *Anderson*, 477 U.S. at 248-49 (*citing First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)).

The record presented is reviewed in the light most favorable to the non-moving party.[39] "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"[40] Further, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[41] Essentially, if a non-movant fails to set forth specific facts that present a triable issue on any relevant issues, his claims should not survive summary judgment.[42]

In addition to the Rule 56 procedures outlined above, Local Rule of Bankruptcy Procedure 7056 invokes the requirements of Local District Court Rule CV-56 with reference to the content and determination of summary judgment motions.[43] That rule, in relevant part, directs a movant to include a Statement of Undisputed Material Facts and to support such a statement with "appropriate citations to proper summary judgment evidence."[44] It directs a respondent that any response "should be supported by

---

[39] *Matsushita,* 475 U.S. at 587.

[40] *Id.*

[41] *Anderson,* 477 U.S. at 248.

[42] *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 494 (5th Cir. 2001).

[43] BANKR. E.D. TEX. LOCAL R. 7056.

[44] "The phrase 'appropriate citations' means that any excerpted evidentiary materials that are attached to the motion or the response should be referred to by page and, if possible, by line." *Broussard v. Oryx Energy Co.*, 110 F.Supp.2d 532, 536 (E.D. Tex. 2000) (*citing* E. D. TEX. LOCAL R. CV-56(d)).

appropriate citations to proper summary judgment evidence."[45]  With regard to the

disposition of the motion, the rule states:

> (c) **Ruling**.  In resolving the motion for summary judgment, the court will assume
> that the facts as claimed and supported by admissible evidence by the moving
> party are admitted to exist without controversy, *except to the extent* that such facts
> are controverted in the response filed in opposition to the motion, as supported by
> proper summary judgment evidence.  The court will not scour the record in an
> attempt to determine whether the record contains an undesignated genuine issue of
> material fact for trial before entering summary judgment.[46]

Yet the Defendant in this instance has filed no response in opposition to the

Plaintiffs' summary judgment motion nor has the Defendant tendered any responsive

summary judgment evidence with regard to the issues raised therein.  The failure of a

party to oppose a motion for summary judgment is not singularly sufficient to justify the

granting of summary judgment because the court must still assess whether the moving

party has fulfilled its burden of demonstrating that there is no genuine issue of material

fact and its entitlement to judgment as a matter of law.  *Stump v. Barnhart*, 387 F. Supp.

2d 686, 690 (E.D. Tex. 2005) (*citing John v. State of Louisiana (Bd. of Tr. for State Coll.*

*and Univ.)*, 757 F.2d 698, 708 (5th Cir.1985).  If that burden is fulfilled, however, the

non-movant is "under an obligation to respond  . . .  in a timely fashion and to place

before the court all materials it wishes to have considered when the court rules on the

motion."  *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1293 n. 11 (5th Cir. 1994).  When the

---

[45]  E.D. TEX. LOCAL R. CV–56(b).

[46]  E.D. TEX. LOCAL R. CV–56(c) (emphasis added).

moving party carries its initial burden and the non-movant fails to respond, a court may accept as undisputed the material facts set forth in support of the unopposed motion for summary judgment. *Kirwa v. Wells Fargo Bank, N.A.*, 2019 WL 2575058, at *3 (E.D. Tex. June 3, 2019), *adopted by* 2019 WL 2568611 (E.D. Tex. June 20, 2019); E.D. TEX. LOC. R. CV–56(c).

In this case, the Plaintiffs bear the ultimate burden as to the nondischargeability of the debt. Thus, the Plaintiffs are entitled to a summary judgment only if there exists no genuine issue of material fact as to each essential element under the cited subpart of § 523(a)(4). The motion under consideration herein seeks the entry of a judgment as a matter of law through the application of collateral estoppel. The Plaintiffs claim that the facts as established in the State Court Litigation are binding on the Defendant under Texas law and form a legitimate factual basis for a determination that the underlying judgment debt is nondischargeable in the Defendant's Chapter 13 bankruptcy case. Resolving this question requires that the Court first determine the applicability of the doctrine itself. If collateral estoppel applies, any relevant factual findings (i.e., related to the required elements for nondischargeability) regarding the actions of the Defendant in this common set of operative facts upon which the State Court Judgment is based should not be disturbed here. The Court applies those findings to the required elements for nondischargeability to ascertain which factual issues, if any, remain. If collateral estoppel does not apply, the Plaintiffs' motion must be wholly denied.

-12-

*Standards for Issue Preclusion (Collateral Estoppel)*

"Collateral estoppel or, in modern usage, issue preclusion, 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'"[47]  In other words, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."[48]  "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions."[49]

In the bankruptcy dischargeability context, "parties may invoke collateral estoppel in certain circumstances to bar relitigation of issues relevant to dischargeability" and thereby satisfy the elements thereof.[50]  Namely, when an issue that forms the basis for a creditor's theory of nondischargeability has been litigated in a prior proceeding, neither

---

[47] *Schiro v. Farley*, 510 U.S. 222, 232 (1994) (internal quotations omitted).

[48] *Montana v. U. S.*, 440 U.S. 147, 153 (1979) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5 (1979)).

[49] *Id.* at 153-54.

[50] *Raspanti v. Keaty (In re Keaty)*, 397 F.3d 264, 270 (5th Cir. 2005) (quotation marks omitted).

the creditor nor the debtor may relitigate those grounds.[51]  While the doctrine of issue

preclusion applies in bankruptcy dischargeability litigation, a bankruptcy court retains

exclusive jurisdiction to determine whether a debt is dischargeable.[52]

The inquiry into the preclusive effect of a state court judgment is guided by the

Full Faith and Credit Act, which states that "judicial proceedings . . . shall have the same

full faith and credit in every court within the United States . . . as they have by law or

usage in the courts of such State . . . from which they are taken."  28 U.S.C.A. § 1738

(West 2006).[53]  "It has long been established that § 1738 does not allow federal courts to

employ their own rules of res judicata in determining the effect of state judgments.

Rather, it goes beyond the common law and *commands* a federal court to accept the rules

chosen by the State from which the judgment is taken."[54]  Effectively, the "Full Faith and

Credit Act expands the Full Faith and Credit Clause and requires federal courts to give

full faith and credit to state court proceedings."[55]  Thus, federal courts are not free to

ignore the principles of issue preclusion utilized by the forum state in which the prior

---

[51]  *RecoverEdge, L.P. v. Pentecost*, 44 F.3d 1284, 1294 (5th Cir. 1995).

[52]  *Grogan v. Garner*, 498 U.S. 279, 284 n. 11 (1991).

[53]  In the vernacular of the Supreme Court, § 1738 "implements" the Full Faith and Credit Clause of the United States Constitution – U.S. Const., Art. IV, § 1.  *Migra v. Warren City School Dist. Bd. of Ed.*, 465 U.S. 75, 80, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984).

[54]  *Shimon v. Sewerage & Water Bd. Of New Orleans*, 565 F.3d 195, 199 (5th Cir. 2009) (emphasis added) (*citing Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518, 523, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986)) and *Kremer v. Chem. Constr. Corp*., 456 U.S. 461, 481–82, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982)).

[55]  *Davis v. Chase Home Finance, LLC*, 597 F. App'x 249, 252 (5th Cir. 2015).

judgment was entered.[56]

Because the judgment issued against the Defendant was entered in a Texas state court, this Court is required to apply the Texas law of issue preclusion.[57]  A party is collaterally estopped from raising an issue under Texas law when (1) the facts sought to be litigated in the second case were fully and fairly litigated in the first; (2) those facts were essential to the prior judgment; and (3) the parties were cast as adversaries in the first proceeding.[58]  Once an actually litigated and essential issue is determined, that issue is conclusive in a subsequent action between the same parties.  Consequently, as the party asserting the preclusive effect of any findings arising from the State Court Litigation, the Plaintiffs bear the burden of proof on all elements of collateral estoppel.

Addressing each of the three elements in reverse order, the Defendant in his answer acknowledges the State Court Litigation and its results, thereby establishing the third requirement of issue preclusion under Texas law.  Moreover, the summary judgment evidence shows that the factual determinations tendered in the State Court Litigation were essential to the entry of the State Court Judgment entered against the Defendant. In fact, the State Court Judgment, and the factual findings contained therein, establish several facts which undergird the liability of the Defendant to the Plaintiffs, including a

---

[56] *Schwager v. Fallas (In re Schwager)*, 121 F.3d 177, 181 (5th Cir. 1997).

[57] *Ingalls v. Erlewine (In re Erlewine)*, 349 F.3d 205, 210 (5th Cir. 2003); *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195 (5th Cir. 1996).

[58] *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984).

**-15-**

determination that the Defendant was a trustee of construction trust funds within the meaning of the Texas Construction Trust Fund Act, and that the Debtor misappropriated such funds under § 162.031 of the Texas Property Code.  Such facts arose from an actual evidentiary trial and were essential to the entry of the State Court Judgment.  Thus, all three requirements for the application of collateral estoppel under Texas law are satisfied and the Defendant is hereby estopped from relitigating those determinations in opposition to the State Court Judgment.

*Section 523(a)(4): Debt for Fraud or Defalcation While Acting in a Fiduciary Capacity*

11 U.S.C. § 523(a)(4) provides that "[a] discharge under 11 U.S.C.§ 727 does not discharge an individual from any debt — for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny."  The Fifth Circuit has noted "that this discharge exception was intended to reach those debts incurred through abuses of fiduciary positions and through active misconduct whereby a debtor has deprived others of their property by criminal acts; both classes of conduct involve debts arising from the debtor's acquisition or use of property that is not the debtor's."[26]  Whether the actions of an individual were taken in a fiduciary capacity for the purposes of § 523(a)(4) is determined by federal law.[27]  However, "state law is important in determining whether or

[26] *Miller v. J.D. Abrams Inc. (Matter of Miller)*, 156 F.3d 598, 602 (5th Cir.1998), *cert. denied*, 526 U.S. 1016 (1999) (internal quotations omitted).

[27] *FNFS, Ltd. v. Harwood (In re Harwood)*, 637 F.3d 615, 620 (5th Cir. 2011).

not a trust obligation exists."[28]

The Fifth Circuit has discussed the concept of a fiduciary under § 523(a)(4) in the

following terms:

> [T]he concept of fiduciary under § 523(a)(4) is narrower than
> it is under general common law.  Under § 523(a)(4),
> "fiduciary" is limited to instances involving express or
> technical trusts.  The purported trustee's duties must,
> therefore, arise independent of any contractual obligation.
> The trustee's obligations, moreover, must have been imposed
> prior to, rather than by virtue of, any claimed
> misappropriation or wrong.  Constructive trusts or trusts *ex
> malificio* thus also fall short of the requirements of
> § 523(a)(4).
> . . . Statutory trusts, by contrast, can satisfy the dictates of
> § 523(a)(4).  It is not enough, however, that a statute purports
> to create a trust:  A state cannot magically transform ordinary
> agents, contractors, or sellers into fiduciaries by the simple
> incantation of the terms "trust" or "fiduciary."  Rather, to
> meet the requirements of § 523(a)(4), a statutory trust must
> (1) include a definable res and (2) impose "trust-like" duties.[29]

However, the trust relationship must exist prior to the creation of, and without reference

to, the indebtedness in question.[30]  The Fifth Circuit has recognized that the "technical" or

---

[28] *Gupta v. Eastern Idaho Tumor Institute, Inc. (In re Gupta)*, 394 F.3d 347, 350 (5th Cir. 2004).

[29] *Texas Lottery Comm'n v. Tran (In re Tran),* 151 F.3d 339, 342-43 (5th Cir. 1998).

[30] *Angelle v. Reed (In re Angelle)*, 610 F.2d 1335, 1338 (5th Cir. 1980).

"express" trust requirement is not limited to trusts that arise by virtue of a formal trust agreement, but includes relationships in which trust-type obligations are imposed pursuant to statute or common law.[31]  In this instance, the statutory trust through which the Plaintiffs seek to impose a fiduciary capacity upon the Defendant is created under the Texas Construction Trust Fund Act (the "CTFA").

*The Texas Construction Trust Fund Act*

The purpose of the CTFA is to protect artisans, laborers, subcontractors, materialmen, and now property owners, by creating a statutory trust fund for their benefit from payments made under a construction contract for the improvement of real property in Texas.[32]  As one court has succinctly described its primary contents:

> Under the CTFA, construction payments become trust funds "if the payments are made to a contractor or subcontractor or to an officer, director, or agent of a contractor or subcontractor, under a construction contract for the improvement of specific real property in this state." TEX. PROP. CODE ANN. § 162.001(a) (West 2014).  "A contractor . . . who receives trust funds or who has control or direction of trust funds, is a trustee of the trust funds." *Id.* at § 162.002.  In turn, a subcontractor who furnishes labor or material for an improvement on a specific piece of real property "is a beneficiary of any trust funds paid or received in connection with the improvement."  *Id.* at § 162.003(a).  Construction trust funds are

---

[31]  *FNFS, Ltd. v. Harwood (In re Harwood)*, 404 B.R. 366, 393 (Bankr. E.D. Tex. 2009) (*citing LSP Inv. Partnership v. Bennett (In re Bennett)*, 898 F.2d 779, 784-85 (5th Cir.), *cert. denied*, 510 U.S. 1011 (1993)).

[32]  See 8 TEX. PROP. CODE ANN. § 162.003 (West 2014).

misapplied when a trustee "intentionally or knowingly or with intent to defraud, directly or indirectly retains, uses, disburses, or otherwise diverts trust funds without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust funds." *Id.* at § 162.031(a).[33]

Thus, the trust charges the holder, acting in the role of a statutory trustee, with protecting and segregating the construction payments for the benefit of would-be trust beneficiaries.  Such beneficiaries need do nothing to secure their respective interests. Unlike the statutory requirements for perfection of a lien by a subcontractor under Chapter 53 of the Texas Property Code, neither the CTFA nor the jurisprudence construing it prescribes any procedural prerequisites or conditions.[34]   If payments under a construction contract are deemed to be trust funds, entitlement vests "*without regard* to the laborer's compliance with the procedural requirements under Chapter 53."[35] Thus, in recognition of its role as a significant supplement to other remedies provided for suppliers and subcontractors in the Texas Property Code, such as the filing of liens under Chapters 53 and 56 therein, Texas courts construe the CTFA broadly to effectuate its remedial purpose — to protect the presumably "exposed" subcontractor or supplier from

---

[33]  *Tag Inv., Ltd. v. Monaco (In re Monaco)*, 514 B.R. 477, 483 (Bankr. W.D. Tex. 2014).

[34]  *In re Lone Oak Fabricators*, 2009 WL 1025092, at *5 (Bankr. E.D. Tex., Apr. 6, 2009) (*citing McCoy v. Nelson Util. Serv. Inc.*, 736 S.W.2d 160, 164 (Tex. App.— Tyler 1987, writ ref 'd n.r.e.)).

[35]  *Exchanger Contractors, Inc. v. Comerica Bank-Tex. (In re Waterpoint Int'l L.L.C.)*, 330 F.3d 339, 345 (5th Cir. 2003) (emphasis in original).

malfeasance by the recipient of construction payments.[36]

However, the assessment of civil liability under Texas law for a CTFA violation arising from a diversion of construction trust funds from its intended beneficiaries is not singularly sufficient to render such debt nondischargeable as a defalcation while acting in a fiduciary capacity under § 523(a)(4) of the Bankruptcy Code.  As the Fifth Circuit explained in *Coburn Co. of Beaumont v. Nicholas (In re Nicholas)*, 956 F.2d 110, 113 (5th Cir. 1992), the fiduciary relationship imposed by the CTFA is sufficient for the purposes of nondischargeability under §523(a)(4) only if the beneficiary-plaintiff can demonstrate the existence of wrongful conduct under the Act by the trustee-contractor.[37] Stated differently, the Circuit in *Nicholas* held that the Texas construction trust fund statute "only creates a fiduciary duty to the extent that activity is wrongful under the statute.  For the purposes of § 523(a)(4), a fiduciary duty only arises if there is a simultaneous wrongful misapplication of funds."[38]  Thus, a creditor seeking to use the Texas Construction Trust Fund Act to establish nondischargeability under the fiduciary subsection of § 523(a)(4) must not only show that the contractor intentionally, knowingly, or with intent to defraud diverted trust funds from its intended beneficiaries, but it necessarily also requires that creditor to negate the existence of the statutory affirmative

---

[36] *Dealers Elec. Supply Co. v. Scroggins Const. Co., Inc.*, 292 S.W.3d 650, 658 (Tex. 2009).

[37] *Coburn Co. of Beaumont v. Nicholas (In re Nicholas)*, 956 F.2d 110, 113 (5th Cir. 1992).

[38] *Ratliff Ready-Mix, L.P. v. Pledger (In re Pledger)*, 592 F. App'x. 296, 299 (5th Cir. 2015).

defense regarding the trustee's use of the trust funds as a part of its case-in-chief.[39]  In

statutory parlance, the creditor seeking to establish § 523(a)(4) nondischargeability in this

context must prove that the diverted funds were not used by the contractor "for actual

expenses directly related to the construction,"[40] notwithstanding the anomaly that the

applicable statute would place that evidentiary burden upon the contractor-trustee.[41]

In this case, the Plaintiffs have established, through the Texas principles of

collateral estoppel imposed by the full faith and credit statute, that the Defendant engaged

in intentional wrongs in breach of his fiduciary duty to them and which inflicted

significant injury.  The Defendant knowingly engaged in wrongful disbursements of the

$19,943.87 entrusted to his care.  The Defendant was not immunized from liability under

the CTFA in the State Court Litigation by proof that any portion of such sums was

---

[39] *Id.* at 302.  *See also Kahkeshani v. Hann (In re Hann),* 544 B.R. 326, 333 (Bankr. S.D. Tex. 2016) ["In a nondischargeability proceeding, the creditor must prove that the debtor's use of trust funds exceeds the protection of the affirmative defense provided to contractors under the statute."] and *Phelps v. Hunt (In re Hunt),* 2019 WL 4582832 at *9 (Bankr. N.D. Tex. Sept. 20, 2019).

[40] The term "directly related" is not as restrictive as it seems.  The exception, as interpreted by the Fifth Circuit, permits a contractor to spend trust funds "on expenses related to general business overhead" without liability, including spending such funds on projects other than the one for which they were received.  *Swor v. Bartley Tex. Builders Hardware, Inc. (In re Swor),* 347 F. App'x. 113, 116 (5th Cir. 2009).  Such breadth was again affirmed by the Circuit in *Pledger,* which acknowledged that the exception encompassed "expenses such as telephone bills, salaries, and other overhead."  *Pledger,* 592 F. App'x. at 302.  Though the exception has been generically described as "open-ended," *Monaco v. Tag Inv., Ltd. (In re Monaco),* 839 F.3d 413, 417 (5th Cir. 2016),  *Pledger* reminds us (from *Nicholas*) that this exception does not automatically incorporate *all* company expenses and that there is a distinction "between a contractor who diverts trust funds to keep the business going and a contractor who diverts funds for his own use."  *Pledger,* 592 F. App'x. at 302 (citing *Nicholas,* 956 F.2d at 114).

[41] Section 162.031(b), in relevant part, states that "[i]t is an affirmative defense to prosecution or other action . . . that the trust funds not paid to the beneficiaries of the trust were used by the trustee to pay the trustee's actual expenses directly related to the construction or repair of the improvement."  8 TEX. PROP. CODE ANN. §162.031(b) (West 2014).

utilized for the legitimate expenses of his business.  Indeed, the state court found that the

Defendant did not maintain account records sufficient to trace the disposition of such

missing sums.  Thus, the state court ultimately found that the Defendant had knowingly

diverted and misapplied the funds in his trust.  In engaging in that intentional failure to

account and to deliver the trust funds to the appropriate beneficiaries, the Defendant knew

of the improper nature of his behavior and possessed a "culpable state of mind" with

regard to his actions.[42]  Accordingly, as a result of the state court's determination that the

Defendant had knowingly engaged in his improper conduct toward the Plaintiffs, the

entry of judgment as a matter of law on the Plaintiffs' claim under § 523(a)(4) is

appropriate and the indebtedness evidenced by the State Court Judgment is rendered

nondischargeable under § 523(a)(4) as arising from a defalcation committed by the

Defendant while acting in a fiduciary capacity.

     With regard to the nondischargeability of attorneys' fees and interest awarded to

the Plaintiffs in the State Court Judgment, the United States Supreme Court has stated

that "[o]nce it is established that specific money or property has been obtained by fraud,

---

[42]  A "defalcation" for the purposes of § 523(a)(4) "includes a culpable state of mind requirement" involving "knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior."  *Bullock v. BankChampaign, N.A.*, ___U.S.___, 133 S.Ct. 1754, 1757, 185 L.Ed.2d 922 (2013).  According to *Bullock*, "where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term [defalcation] requires an intentional wrong."  *Id.* at 1759. Such an intentional wrong encompasses not only conduct which the fiduciary knows is improper, but it also encompasses reckless conduct, such as when a fiduciary "consciously disregards (or is willfully blind to) a substantial and unjustifiable risk" that his conduct will result in a breach of fiduciary duty.  *Id.*  The state court's determination that the Defendant knowingly diverted the trust funds satisfies that requirement.

. . . 'any debt' arising therefrom is excepted from discharge."[43]  Though the facts in
*Cohen* specifically addressed a liability rendered nondischargeable under the actual fraud
prong of § 523(a)(2)(A), its rationale to prevent a discharge of all liability arising from
circumstances that render a debt nondischargeable under § 523(a) has been extended to
cases in which the primary debt is rendered nondischargeable due to fraud or defalcation
while acting in a fiduciary capacity.[44]  Thus, in light of the jurisprudence that § 523(a)
should be properly construed to bar the discharge of all liability arising from the
categories of misconduct that render a debt nondischargeable, thereby insuring "that the
creditors' interest in recovering full payment of debts in these categories outweigh[s] the
debtors' interest in a complete fresh start," *Cohen*, 523 U.S. at 222, the Court concludes
that the attorneys' fees and interest awarded to the Plaintiffs in the State Court Judgment,
based upon the Defendant's misconduct that constitutes a defalcation while acting in a
fiduciary capacity, must also be rendered nondischargeable under § 523(a)(4).

## Conclusion

Accordingly, upon due consideration of the pleadings, the proper summary
judgment evidence submitted by the Plaintiffs, the relevant legal authorities, and for the

---

[43]  *Cohen v. de la Cruz*, 523 U.S. 213, 218 (1998); *see also Snook v. Popiel (In re Snook)*, 168 F.
App'x. 577, 578 (5th Cir. 2006); *S&S Food Corp. v. Sherali (In re Sharali)*, 490 B.R. 104, 125 (Bankr.
N.D. Tex. 2013).

[44]  *Schwertner Backhoe Svcs., Inc. v. Kirk (In re Kirk)*, 525 B.R. 325, 338 (Bankr. W.D. Tex.
2015);  *Healey v. Healey (In re Healey)*, 2018 WL 4808362, at *8 (Bankr. E.D. Tex., Oct. 2, 2018);
*Drexel Highlander Ltd. P'ship v. Edelman (In re Edelman)*, 2014 WL 1796217, at *43 (Bankr. N.D. Tex.,
May 6, 2014).

-23-

reasons set forth in this decision, including the legal conclusion that the Defendant is

precluded from controverting any of the facts that are established under the Texas

principles of issue preclusion, the Court concludes that there is no genuine issue as to any

material fact germane to a determination of dischargeability under the complaint and that

the Plaintiffs, Harry and Dawanna Vrana, are entitled to a summary judgment that the

debt owed to them by the Debtor-Defendant, Daniel Thornhill, Jr., arising from the State

Court Judgment entered by the 71st Judicial District Court in and for Harrison County,

Texas in Cause No. 17-0763, is nondischargeable under the provisions of 11 U.S.C.

§ 523(a)(4).  The Court further concludes that the Plaintiffs' recovery of $350.00 in court

costs expended in the filing of the adversary complaint is also proper under 28 U.S.C.

§ 1920.  An appropriate order and judgment will be entered which is consistent with this

opinion.

Signed on 09/30/2019

THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE